UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER JONES,<br><br>    Plaintiff,<br><br>  v.<br><br>SOUTH JERSEY INDUSTRIES, INC., MICHAEL J. RENNA, SARAH M. BARPOULIS, VICTOR A. FORTKIEWICZ, SHEILA HARNETT-DEVLIN, G. EDISON HOLLAND, JR., SUNITA HOLZER, KEVIN M. O'DOWD, CHRISTOPHER PALADINO, JOSEPH M. RIGBY, and FRANK L. SIMS,<br><br>    Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Christopher Jones ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against South Jersey Industries, Inc. ("SJI" or the "Company") and SJI's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Infrastructure Investments Fund through its subsidiary NJ Boardwalk Holdings LLC and its wholly-owned subsidiary Boardwalk Merger Sub, Inc. (collectively "IIF").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on April 11, 2022. The Proxy

1

recommends that SJI stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby SJI is acquired by IIF. The Proposed Transaction was first disclosed on February 24, 2022, when SJI and IIF announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which IIF will acquire all of the outstanding shares of common stock of SJI for $36.00 per share (the "Merger Consideration"). The deal is valued at approximately $8.1 billion and is expected to close in the fourth quarter of 2022.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by SJI management, as well as the financial analyses conducted by BofA Securities, Inc. ("BofA"), SJI's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to SJI's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to SJI's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of SJI.

6.     Defendant SJI is a corporation organized and existing under the laws of the State of New Jersey. The Company's principal executive offices are located at 1 South Jersey Plaza,

Folsom, New Jersey 08037. SJI common stock trades on NYSE under the ticker symbol "SJI."

7.     Defendant Michael J. Renna has been President and CEO of the Company since 2015, and has been a director of the Company since 2014.

8.     Defendant Sarah M. Barpoulis has been a director of the Company since 2012.

9.     Defendant Victor A. Fortkiewicz has been a director of the Company since 2010.

10.    Defendant Sheila Hartnett-Devlin has been a director of the Company since 1999.

11.    Defendant G. Edison Holland, Jr. has been a director of the Company since 2019.

12.    Defendant Sunita Holzer has been a director of the Company since 2011.

13.    Defendant Kevin M. O'Dowd has been a director of the Company since 2020.

14.    Defendant Christopher J. Paladino has been a director of the Company since 2020.

15.    Defendant Joseph M. Rigby has been a director of the Company since 2016. Defendant Rigby serves as non-executive Chairman of the Board.

16.    Defendant Frank L. Sims has been a director of the Company since 2012.

17.    Defendants Renna, Barpoulis, Fortkiewicz, Hartnett-Devlin, Holland, Holzer, O'Dowd, Paladino, Rigby, and Sims are collectively referred to herein as the "Board."

18.    Nonparty Infrastructure Investments Fund is a private investment vehicle created and advised by J.P. Morgan Asset Management.

19.    Nonparty NJ Boardwalk Holdings is a Delaware limited liability company.

20.    Nonparty Boardwalk Merger Sub, Inc. is a New Jersey corporation and is a wholly owned subsidiary of NJ Boardwalk Holdings LLC.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

22.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

FURTHER SUBSTANTIVE ALLEGATIONS

A.  **Background of the Company and the Proposed Transaction**

24.    SJI is the holding company for South Jersey Gas Company, which distributes natural gas in southern New Jersey. SJI also owns Elizabethtown Gas Company, which distributes natural gas in northern and central New Jersey. Other Company subsidiaries own oil and gas rights in Pennsylvania, markets electricity to retail end users, and provides energy procurement services.

25.    On February 23, 2022, the Company entered into the Merger Agreement with IIF.

26.    According to the press release issued on February 24, 2022, announcing the Proposed Transaction:

**South Jersey Industries, Inc. Enters into Agreement to be Acquired by the Infrastructure Investments Fund**

**Represents Significant Long-Term Investment to Support the Success of SJI, Its Employees, Customers and Communities**

**Reinforces SJI's Ability to Provide Safe, Reliable, Affordable Clean Energy, Including Achieving Critical Decarbonization Efforts by 2040**

**SJI to Remain Locally Managed and Operated with Headquarters in Folsom, New Jersey**

**FOLSOM, NJ, and NEW YORK, February 24, 2022** – South Jersey Industries, Inc. (NYSE: SJI) (SJI) and the Infrastructure Investments Fund (IIF), a private investment vehicle focused on investing in critical infrastructure assets, today announced that they have entered into a definitive agreement under which IIF will purchase SJI for $36.00 per share in cash, reflecting an enterprise value of approximately $8.1 billion.

"As energy markets across the U.S. and New Jersey accelerate the transition toward low carbon and renewable energy, the SJI Board determined that now is the opportune time to join forces with IIF," said Mike Renna, President and CEO, SJI. "IIF is a trusted partner and long-term investor in utility and renewable energy companies, and together we will be well positioned to execute on SJI's clean energy and decarbonization initiatives in support of the environmental goals of our State and region. In addition, as a private company and with IIF's support, we will have additional resources to continue to modernize our critical infrastructure, maintain our high standard of customer service at reasonable rates, and further enhance the safety, reliability and sustainability of our businesses."

Mr. Renna continued, "This transaction is a testament to the achievements of our employees, and we are pleased that IIF recognizes the strength of our workforce and culture and shares our commitment to supporting the communities we serve. I would like to thank each of our employees for all they do each day to contribute to the success of SJI. I look forward to building on our strong foundation together."

IIF's long-term approach to investing in utility and infrastructure assets is directly aligned with SJI's mission to "build a better today and tomorrow" for the more than 700,000 families and businesses SJI serves, while continuing to support its 1,100-employee workforce and the communities in which SJI operates. SJI and IIF will work together to advance SJI's sustainability goals while SJI continues to provide excellent customer service, maintains an outstanding team and culture, and delivers on its commitment to improving the quality of life for all those who live and work in the communities it serves.

Andrew Gilbert, Investment Principal to IIF, said, "SJI has established itself as a leader among its peers, distinguished by the strength of its utilities and ability to provide quality service to its customers. SJI's long track record of investing in sustainability and clean energy initiatives has translated into a clear competitive advantage. We believe our expertise, resources and experience can help SJI further build on its leading position in the industry. We have great respect for SJI's talented team and look forward to partnering with them to safely provide clean and reliable energy to the communities of New Jersey."

**Leadership and Headquarters**

Following the close of the transaction, SJI will remain locally managed and

operated with headquarters in Folsom, New Jersey. Mike Renna will continue as Chief Executive Officer and the current management team will continue to lead SJI.

**Terms of the Transaction**

The per share purchase price of $36.00 represents a 46.3% premium to SJI's 30-day VWAP as of February 23, 2022, the last trading day prior to the announcement of the agreement. The transaction was unanimously approved by SJI's Board of Directors and is expected to close in the fourth quarter of 2022, subject to the approval of SJI's shareholders, the receipt of regulatory approvals, including by the New Jersey Board of Public Utilities, and other customary closing conditions. Dividends payable to SJI shareholders are expected to continue in the ordinary course until the closing, subject to approval by SJI's Board of Directors. Upon completion of the transaction, SJI's shares will no longer trade on the New York Stock Exchange, and SJI will become a private company.

**B.  The Materially Incomplete and Misleading Proxy**

27.    On April 11, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

> ### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

28.    The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of BofA's fairness opinion, BofA reviewed "certain internal financial and operating information. . . furnished to or discussed with BofA Securities by the management of the Company, including the Company Forecasts." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that SJI's management provided to the Board and BofA.

29.     Notably, the Proxy fails to disclose the line items underlying the calculation of Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow. In addition, the Proxy does not disclose the forecasts shared with IIF and its financial advisor on December 16, 2021, the forecasts provided to BofA on January 11, 2022, or the changes made to the forecasts as approved at the February 17, 2022, Board meeting. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning BofA's Financial Analyses*

30.     With respect to the *Selected Publicly Traded Companies Analysis,* the Proxy fails to disclose the Company's estimated earnings per share for 2022 and 2023, as well as estimated EBITDA for 2022.

31.     With respect to the *Discounted Cash Flow Analysis--WholeCo,* the Proxy fails to disclose the inputs and assumptions underlying the selection of discount rates of 4.50% to 5.50%. The Proxy also fails to disclose the calculated implied terminal enterprise values for the Company.

32.     With respect to the *Discounted Cash Flow Analysis--SOTP,* the Proxy fails to disclose the unlevered after-tax free cash flows for each of the utility segment and non-utility segment for fiscal years 2022 to 2025. The Proxy further fails to disclose the net income for the utility segment and the non-utility segment for the year ending December 31, 2025. The Proxy also fails to disclose inputs and assumptions underlying the selection of discount rates of 4.25% to 5.25% for the utility segment, and 8.5% to 10.5% for the non-utility segment. In addition, the Proxy fails to disclose the calculated implied terminal enterprise values for each of the utility segment and the non-utility segment.

33.     With respect to the Wall Street Analysts Price Targets, the Proxy fails to disclose the individual price targets and the source thereof. In addition, the Proxy fails to disclose the basis

for discounting the price targets.

34.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

35.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

36.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

37.     Further, the Proxy indicates that on February 23, 2022, BofA reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view to SJI stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning BofA's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

38.     Plaintiff is immediately threatened by the wrongs complained of herein and lacks

an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Defendants have filed the Proxy with the SEC with the intention of soliciting SJI stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

41.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of SJI, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of SJI shares and the financial analyses performed by BofA in support of its fairness opinion.

44.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or

should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that BofA reviewed and discussed its financial analyses with the Board during various meetings including on February 23, 2022, and further states that the Board considered BofA's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

45.    The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.    The Individual Defendants acted as controlling persons of SJI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SJI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to SJI stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 27, 2022                                      **ROWLEY LAW PLLC**


*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*